Thanks Jasmine, I'm sorry, I paid more attention than you did. Thank you. May it please the court. Section 1326D sets forth three gatekeeping requirements that an illegal reentry defendant must meet before he can collaterally challenge a prior removal order. One, exhaustion of administrative remedies. Two, deprivation of the opportunity for judicial review. And three, fundamental unfairness. Two years ago yesterday, in Palomar, Santiago, the Supreme Court confirmed that these requirements are conjunctive and made clear that they are mandatory and not subject to excusal. Conjunctive, as in the defendants must meet all three. So if an IJ had told someone facing removal, you don't have the right to appeal, I'm telling you now you should waive any rights you have and before I proceed any further, I'm directing you to waive your rights to appeal. And the immigrant, the person facing the removal order, waives their rights such that they don't pursue administrative remedies and they don't pursue any kind of judicial relief. Would you agree with me that an IJ doing that would be fundamentally unfair? Oh yes. So therefore, if it's only fundamentally unfair, he can't bring a collateral proceeding because he didn't pursue administrative remedies, exhaust them. And he didn't exhaust, he didn't pursue his judicial remedies, notwithstanding the fact that an IJ told him he didn't have them, told him he had to waive them, and then deported him? No, and the reason- And the fact that they're in conjunctive doesn't mean that if something's fundamentally unfair, you have to pursue the other two as long as the fundamental unfairness goes to an unknowing waiver with regard to the first two. Well, in the- Would you agree with me on that? I would agree that fundamental unfairness can be mixed in with the unavailability of administrative exhaustion as well as improper deprivation of appeal. Well, you used the word conjunctive and I wanted to explore with you- Certainly. Where it's fundamentally unfair that someone doesn't have the opportunity to pursue their administrative remedies or exhaustion. And so I take it then that you say that there's a fundamental unfairness exception that borders within one and two? I wouldn't say that it borders within them. The court is allowed to look at it and say as part of the fundamental unfairness that the proceeding was basically the way you put it, lawless. And I would say that the option that you just gave is a fundamentally lawless proceeding. There, there'd be no question that one and two would have already been fulfilled because one builds into it that administrative remedies that must be exhausted are only those that are available. And it's not available if the judge says you can't do this, I am making you waive. Number two, deprivation of appellate rights must- What if that's just an incorrect statement? So, so the judge tells the petitioner the wrong thing? That in and of itself, it depends what the incorrect statement is. If the incorrect statement goes to the availability of appellate review or exhaustion, that is, if we just say the judge rather than forcefully saying I'm requiring you to waive said, the person said, am I allowed to appeal this? And the judge said, I don't think you are allowed to appeal it. That one would likely satisfy one and two as well, even though it's an incorrect statement and not necessarily telling the person you can't do it. I'm confused about your argument because that to me sounds like it's a line drawing argument as to how unfair something was. What I understood you to say was that Palomar-Santiago abrogated SOSA, which I actually don't understand being that you conceded that Mendoza-Lopez is still good law. That's right. So how do we square Mendoza-Lopez being good law with an abrogation of SOSA? Because Mendoza-Lopez- Right. Because Mendoza-Lopez was decided in a time before you had 13-2016. What Mendoza-Lopez said, what it held and what is still good law, is that there needs to be some availability of collateral review if there are certain due process violations below. And Congress reacted by setting those out and saying we have decided to adopt and build on Mendoza-Lopez to come up with a three prong test that provides when you are allowed that collateral review, that provides that there is an ability to collaterally challenge your order at the 13-26 stage if effectively it was fundamentally unfair and you were not afforded the opportunity to challenge it below, either by administrative exhaustion or by appeal. So Mendoza-Lopez is still good law, but 13-26 has set forth the Mendoza-Lopez framework going forward. And what Palomar-Santiago said is because Congress spoke clearly on this, courts cannot further refine that and say, well- I'm sorry. Isn't an easier way to harmonize all of them is that Mendoza-Lopez sets forth that there is going to be some sort of ability to collaterally attack something when you have a due process violation. And Palomar-Santiago stands for the proposition that if it's not constitutional, you have a situation where someone has to go through the exhaustion. But once we get into a point of where there is an actual constitutional claim, then it becomes the line drawn where you first started about whether or not somebody needs to assess whether or not there is a reasonable reason to have them go through the two other prongs in the beginning. I don't think so. And the reason is that that view would effectively say 13-26-D doesn't really matter. All that courts need to do is look at Mendoza-Lopez and put it in the framework. We have tons of standards where there is a statutory standard that then gets weighed when there is constitutional issues. I'm thinking about jurisdiction. There is the Constitution overlaying the statute. And so I'm not sure why that is not a better harmonization of what is happening here. Well, because here you do have the statute, and there's not a claim that the statute is unconstitutional. And in the Ninth Circuit, there was a claim used. But what there is a claim is that Mr. Gutierrez-Campos was unconstitutionally misinformed. And we can have that debate about whether or not he was. But, like, instead of us having – in the beginning, I thought we were going to have that debate. But now that you've done the Mendoza-Lopez still being good law, I'm just not sure where we should be. And I'm happy to jump into that debate as well, of course. But the point of Palomar-Santiago is that that is only one part of the inquiry, and that Congress has set forth a mandatory structure for the rest of the inquiry. And the problem here is that this effectively collapses the fundamental unfairness into the other two, saying, well, if it's fundamentally unfair, then there aren't the right incentives, there isn't the right basis for an individual to say, I now understand the basis for my appeal or the basis for my administrative relief, except that the Supreme Court said that that isn't enough. It said it very clearly in Palomar-Santiago. It specifically said, and this is at page 1621, nothing suggests that the substantive complexity of an affirmative defense can alone render further review of an adverse decision unavailable. Administrative review of removal orders exists precisely so noncitizens can challenge the substance of an immigration judge's decisions. The immigration judge's error on the merits does not excuse the noncitizen's failure to comply with a mandatory exhaustion requirement if further administrative review and then judicial review, if necessary, could fix that very error. So I can understand that what Congress does, if you read them in the conjunctive, where someone does do the administrative review, then does pursue some form of judicial review and still loses, but it remains fundamentally unfair, that they're entitled to collateral relief. I can appreciate that. But there are another set of cases that Mendoza and Sosa speak to where someone is not aware of or somehow precluded or interdicted with regard to the exercise of one or two administrative review or judicial review. This fellow was deported. He was removed within seven days of the order. And so that's not very much time to bring habeas proceeding or pursue any other judicial remedies. And that's what the judge found below. So the fact that Congress legislates that, does that then abrogate the availability of collateral relief or instances where, for some reason, someone's due process rights to exercise one or two have been unduly impinged? If you can show that whatever happened at the proceeding effectively rendered administrative review unavailable or improperly deprived the defendant, when he was an alien before he was a defendant, of the availability of judicial review, the answer is you can collaterally attack it. And those are built into 1326D. Note that it's not exhaustion of administrative remedies. The statute speaks of exhaustion of available administrative remedies. And what the Supreme Court in Palomar-Santiago has taught is that simply not being told and even being incorrectly told about the potential bases for such a challenge do not render that administrative review unavailable. Rather, the burden is on the alien to decide whether or not he wants to pursue his remedies. The Supreme Court said that in Palomar-Santiago, and I know that I'm beating a dead horse referring to Palomar-Santiago over and over, except that it was as clear as could be. It was a situation much like this where, arguably, and the reason I say arguably is because of Judge Pattis' second question of whether there was fundamental unfairness here, but assuming arguendo that there was fundamental unfairness, this is a situation where the immigration judge, like in Palomar-Santiago, misadvised the defendant of the possibility of relief from removability. In Palomar-Santiago, it was whether he was removable at all. Here it was whether there was a right to voluntary departure. And the Supreme Court said, that's all good and well, but that's not enough. Under 1326d, the burden is on him in the first place to pursue those administrative remedies or now to show that they were actually unavailable, and not simply unavailable because he didn't realize the issue. In Palomar-Santiago, the issue hadn't even existed yet. It was before DUI was determined not to be an aggravated felony. But it's not enough that he didn't or couldn't have perceived the issue because they said, you know something, that's how law is made, is people do end up administratively, collaterally challenging their orders or seeking judicial review. But if I understand you, then what you're saying is that if we agree that Palomar-Santiago abrogates SOSA, there will be no situation in which a failure to exhaust would be excluded because you are defining it out by saying you either meet it because the person said, like, I'm not going to give it to you in the situation that my colleague gave, or they aren't covered by it because it's not available. So is that the government's position that there is going to be no scenario in which a failure to exhaust would be excusable? As long as we can emphasize that word available, yes. Available does an awful lot of work there, which is it has to be available. This addresses the first situation that Judge Wesley came up with where the judge has effectively made this unavailable. And it may be that in future cases there will be a sussing out of what, if anything else, can make something available or unavailable. But what Palomar-Santiago teaches is the failure to advise an alien of a basis to attack does not create unavailability. So your view is that the mistake with regard to the failure to warn or to advise as to voluntary departure, which grows out of the categorical approach issue with regard to the cocaine, didn't affect his ability or didn't make administrative review unavailable or judicial review unavailable in your view? Well, that's not just my view. That's the Supreme Court's view in Palomar-Santiago where they had precisely that situation. I can appreciate you on a ride there, of course, as far as that. But in Palomar, I mean, the simple fact of the matter is that the court said none of that applied because the crime for which he was deemed removable is not a removable offense. And so therefore it took it almost as if it was like invalid and absolved him of any of that. That's really different from a waiver kind of circumstance. But you say this is more akin to that than the hypothetical I gave you at the beginning. I think it is. And I think that one case that helps to define that is Calderon. In the United States v. Calderon, and let me see if I can get the actual pin site to it. In the United States v. Calderon, an interesting thing happened, which was there, unlike most of the Sosa line of cases, in most of the Sosa line of cases, what happened is like here, the immigration judge failed to advise the alien of his right to apply for 212C relief. In Calderon it was different. In Calderon, and this is set forth at 391F3rd at 375, it said here the immigration judge went even farther. He did exactly what it is that the Palomar-Santiago immigration judge did, which he specifically told him there is no 212C relief for you. That is, this wasn't an omission, it was a direct counterstatement. Just like the immigration judge in Palomar-Santiago specifically said you are removable, here the immigration judge in Calderon said you are not qualified for 212C relief. And in Calderon it didn't say, well, that's more akin to this removable as charge and it goes under a different analysis. Instead it said, you know something, that makes it even worse, which kind of makes sense. It makes it even worse for him to say to the guy, you aren't allowed to do this. And so the Supreme Court has said when you do this worse thing, when you affirmatively represent that relief is not available, that still doesn't qualify to get you out of prongs one and two of 1326D. Can I ask about, I think just covering some of the same things we've been talking about but taking a step back, the choice we have is either to say Palomar-Santiago abrogated SOSA or to try to harmonize them and say that SOSA was constitutional holding grounded in Mendoza-Lopez and Palomar-Santiago was a statutory construction case that didn't touch that issue. Why does abrogating SOSA do less violence than the alternative? Well, because SOSA was not a strict constitutional case. That is, it wasn't reaching first principles. Rather, it was a constitutional avoidance case. They relied heavily on Mendoza-Lopez. They did. And they said that this was constitutional avoidance because they thought that there might be a violation of Mendoza-Lopez if they didn't create this exception. It specifically said because Section 1326D was intended as a response to and codification of Mendoza-Lopez, its administrative exhaustion requirement must be subject to at least one significant exception to render it consistent with that decision. And that was at 387 F-3rd at 136. But that analysis is no longer acceptable. Palomar-Santiago said that the canon of constitutional avoidance isn't applicable here because courts should indeed construe statutes to avoid not only the conclusion that they are unconstitutional but also grave doubts upon that score. But this canon has no application in the absence of statutory ambiguity. And here, the text of 1326D unambiguously forecloses Palomar-Santiago's interpretation. And that's at 141 Supreme Court at 1622. If the constitutional avoidance analysis is flipped so that it is – to avoid the constitutional holding, we would say abrogate SOSA. That's right. You could abrogate SOSA. I think that there is a way to harmonize the two. But the way of harmonizing them would be to say we're not going to abrogate SOSA but we're going to scale it back and say what Palomar-Santiago has said is that the mandatory requirements of all three means that you can't bring in another fact that doesn't go to the actual availability of judicial review or administrative exhaustion. Here, namely, just as it was in Palomar-Santiago, misadvice by the judge about your deportation as opposed to, as Your Honor pointed out, misadvice or false advice about the availability of judicial review or administrative exhaustion. That is, it could be that this has refined the SOSA line of cases so that they are still good law except they must conform to 1326D, which says that there are certain considerations that can't go into that analysis. None of this really matters if the New York offense was an aggravated felony, right? Absolutely right. And it was an aggravated felony, and I'm happy to get into that, although I see that I'm well over my time. Well, we're not going to decide that issue. There are three panels of evidence. That's right. I mean, there's a theoretical way that this court could end up having to reach that issue, which is the other panels have a second substance in front of them that doesn't apply here. Did you argue any of those? Are you on any of those cases? Yes, Your Honor. In fact, I was just here on Minter. I think it was two or three weeks ago. I'm very interested in your argument against absurdity. Have you ever been to the New York State Legislature? I know that Your Honor has, and I assume it's absurd. I've been honored to serve there for four years and was counsel to the minority leader for four. So absurdity was something that I thought was a regular thing. But if you lend this to me, I'll leave you alone with regard to that. Well, thank you. If there are no further questions, I'll wait until 9 o'clock. You have a couple minutes for rebuttal. Thank you. Mr. Habib, whenever you're ready. Good morning. May it please the Court. Daniel Habib, Federal Defenders of New York, on behalf of Raul Gutierrez-Campos. The District Court correctly dismissed the illegal reentry information. I'd like to jump right into the 1326d question and highlight what I think is a fairly significant concession I heard from the government just now, which is when the defects that render a removal proceeding fundamentally unfair compromise the availability of administrative review and the availability of judicial review, the collateral challenge may proceed. If that's so, this is an easy case, and this is why. In Mendoza-Lopez, the noncitizens were advised of the right to appeal. Chief Justice Rehnquist points this out in his dissent. They were told they had the right to appeal, but they were not told of any basis to appeal because their availability of discretionary relief in the form of suspension of deportation was not adequately explained to them. Indeed, the Supreme Court repeatedly used phrases such as effective denial of review and functional denial of review, and Justice Scalia dissented on justice ground that the majority had improperly imported an effective or functional denial standard. At 840 of the decision, having summarized those procedural deficiencies in the hearing, the Supreme Court said this. The immigration judge permitted waivers of the right to appeal that were not the result of considered judgments by respondents and failed to advise respondents properly of their eligibility to apply for suspension of deportation. Because the waivers of their right to appeal were not considered or intelligent, respondents were deprived of judicial review. That language applies with full force here. Below, Judge Cronin made a factual finding, reviewed in this court for clear error, and not contested and amply supported by the record, that quote, and this is at SPA 45, the record does not establish a knowing and intelligent waiver of the right to appeal. That was true, Judge Cronin found, for several reasons. One, the failure to discuss the possibility of voluntary departure with Mr. Gutierrez-Campos, and two, more broadly, considering the totality of the circumstances of the hearing, that Mr. Gutierrez-Campos was a non-English speaker, not all of the proceedings were translated from English into Spanish for his benefit. He appeared pro se. He was detained. Judge Cronin found, quote, it does not appear that defendants fully comprehended the nature of the immigration court proceeding, and critically, the actual ruling that the government thinks Mr. Gutierrez-Campos should have appealed, that is, the ruling that there was no relief available to him in the form of voluntary departure, and it's charitable to call it a ruling. What it really is was the immigration judge's acquiescence in an assertion by government counsel, but that actual ruling was made in English and not translated. In those circumstances, to demand that Mr. Gutierrez-Campos nonetheless have pursued administrative review and judicial review, and to preclude him from challenging that administrative determination in this proceeding, would violate due process under the square holding of Mendoza-Lopez. Consequently, this court should affirm. If we affirm, doesn't that cast some constitutional doubt on Palomar-Santiago, suggest that we have doubts about whether if the court had reached that issue, that it might have come out differently? No, Your Honor, because Palomar-Santiago was expressed in its decision not to address any constitutional question. It did so at footnote four. So you would be suggesting, though, that had it addressed a constitutional question, that it might have come out the other way? I don't think that's true, Your Honor. I think what's before this court is, as Your Honor teed it up, whether to abrogate a consistent line of this court's precedents, which are constitutional in nature and based on the constitutional holding of Mendoza-Lopez. The constitutional issues that animated this court's associate precedents were thoroughly aired in that series of cases. They were considered in detail and at length, and the Supreme Court simply didn't touch them. Indeed, that was not an accident. That was a product of litigation strategy, which the government urged the Supreme Court to take cert to correct an outlier extra statutory rule that the Ninth Circuit had concocted and then secured a unanimous decision on what footnote four says is the narrow ground of the statutory issue, whether the exhaustion requirement and the judicial review requirement can be excused on the basis, as Judge Wesley pointed out, of a distinct type of error, the erroneous determination of removability. The Palomar footnote was about a separation of powers issue, about whether the immigration judge could collaterally sort of make a criminal conclusion, right? That's a different issue. So I think there is, I agree that they're not precisely congruent, but I think there is significant overlap. What Palomar-Santiago, the non-citizen in that case, raised was the not only separation of powers, but also the due process question about the use of an administrative adjudication where there's no right to counsel, no right to prove beyond a reasonable doubt, to establish an element of criminal offense. And Palomar-Santiago, in his briefing in the Supreme Court, suggested that that might present constitutional questions. Even assuming that's right, doesn't that still raise the question, though, that like the Supreme Court sort of brushed aside a lurking constitutional question of Palomar-Santiago that maybe it should have dismissed as improperly granted? Or it seems like, you know, there's able counsel there, but to say that footnote four sort of set aside a constitutional issue that was lurking is an odd interpretation for us to take in order to avoid ever getting SOSA. Well, what I would say is to the extent that the constitutional principles that underlie Mendoza, Lopez, and SOSA are distinct from those that were advanced by the respondent in Palomar-Santiago, that's more reason not to treat that decision as having abrogated this Court's precedence, not less. I think it's the law of this circuit that when this Court has thoroughly explored an issue, and the Supreme Court has decided a related issue, but on distinct grounds, and has expressly declined to reach the constitutional question to which this Court gave sustained attention, it would be particularly inappropriate, this Court said, for example, in Ionello, to conclude that the Supreme Court had, sub silencio, abrogated this consistent line of precedent. They had no reason to reach the social issue in Palomar-Santiago. That's exactly. The Ninth Circuit rule was a straight up, just said if the crime that you've been removed on is not a removable offense, you don't have to bother with 1326. The rules don't apply. And so it became very simple. The answer is yes, they do. That's exactly right, Judge Wesley. It's not a question of where there's been some kind of abrogation of due process rights in the adjudication process itself. In fact, your colleague agrees with you in that regard. That's exactly right, Judge Wesley. It's a distinct class of error. There's a tendency to view rulings as black letter rules, but they're never greater extensions of the facts upon which they were determined. And so they can't be taken beyond the logical extreme with regard to that was necessary to resolve the facts before the court. The facts before the court were, in the Ninth Circuit, all Mr. Gutierrez would have to say is, this is not a removable offense. It doesn't matter what happened. I wasn't removable. And therefore, literally, the immigration judge was almost like without jurisdiction to remove me. I mean, it was invalid. It was an invalid proceeding. That's not what Sosa's directed at. Not at all. And in fact, your Honor, the Fourth Circuit in Herrera-Pagoada, a case cited in our response brief, footnote eight of that decision has read Palomar-Santiago in exactly the way your Honor just said. That footnote says that Palomar-Santiago did not consider the effect of an invalid appeal waiver, which is what we have here, on a defendant's ability to satisfy D-1 and D-2. But now I want to pressure a bit. I know that Judge Cronin had some concerns. I've looked at and listened to the audio, and there are startling periods where the interpreter is actually saying what the judge is saying, not interpreting what Mr. Gutierrez' confidences say. Or mistranslating what he's saying. And so there are periods of time where there's not information flowing to Mr. Gutierrez' confidences about what's going on. But these were all things, I mean, and his waiver is just kind of like I want to get out of here and I want to go home. But that's all in the context of the information being filtered to him. The error is not informing him of something that should have been available to him had the law been correctly determined in Judge Cronin's decision or view with regard to whether this was or was not an aggravated felony. It's a long journey here until we get to the error. How does that excuse him from not pursuing administratively? This is something that you could bring up before the BIA, and if you're lost there, aren't these errors of law that then could be corrected in judicial review to the appropriate cert? I think that the simplest answer, Your Honor, is Mr. Gutierrez Campos did not know that the ruling had been made. The ruling, after he's ordered removed, and Mr. Gutierrez Campos conceded removability in this case. After all, he had entered without inspection. So he was removable. He conceded removability. After he did so, the immigration judge asked the government attorney in English, government aware of any relief? Government attorney said no. And that exchange isn't translated. And so to exalt- So it's more than just not informing him. It's not even him even being aware of anything like that. And he so declared. And that's the finding at 45. Yes. He declared that he was not aware. He declared that in general he had, quote, little understanding of what was going on because he was unable to read the papers he was given. Mr. Gutierrez Campos, having never attended school, is illiterate. The immigration judge did not advise him of the availability of voluntary departure. And Mr. Gutierrez Campos declared that he was not aware of the existence of that relief, existence of that relief, let alone that it had been denied in his specific case. He further declared that had he been aware of it, he would have sought it. And Judge Cronin found that not only would he have sought it, but there is a reasonable probability that he would have gotten it. But it is the case that Congress is-1326 is the key to collateral relief. So, I mean, Congress anticipated. That's the thing that strikes me about the conjunctive nature of it. Congress says, look, give the system a chance to people to-it's kind of like parallel to what we do in the criminal context. You know, pursue your relief, pursue your direct appeal, pursue your collateral, you know, other habeas relief that you might have. And then if something remains fundamentally unfair, we'll leave a remedy there in collateral relief. I appreciate that, and we agree that as a general principle, Congress can, consistent with the Constitution, condition the availability of collateral review on administrative exhaustion. This Court so held in Sosa, this Court so held in Johnson. The question is, whereas here there is a non-intelligent, non-knowing waiver of administrative appeal for exactly the reason that the waiver was not knowing and intelligent in Mendoza-Lopez itself, that is to say, a failure to advise properly on the availability of discretionary relief. He walks out of the hearing not having a clue as to what he can do. As Mr. Gutierrez-Campos walks out of the hearing and returns to his jail cell in the Oakdale, Louisiana, detention center, all he knows is that he has been ordered removed in a hearing that lasted less than six minutes, in which he is told there is nothing for him to do, and as to which he has not been advised of the availability of a form of discretionary relief. Indeed, he has no idea that the relief even exists, let alone that it was denied in his case. In those circumstances, and again, this is not my opinion, this is Judge Cronin's factual finding, that the waiver in that circumstance was not knowing and intelligent. And with respect, Mendoza-Lopez, which continues to control, addresses this precise error. It says, where there has been an inadequate advisal regarding the availability of discretionary relief, there has been a deprivation of the right to judicial review that precludes the use of this administrative proceeding to prove an element of a federal crime, absent some opportunity for later federal judicial review. Thank you. Thank you. Thank you, counsel. Thank you. I'm going to start, if I may, where Mr. Habib almost left off just before the end, which was he said that he agrees that Congress can condition a collateral challenge on whether or not there was administrative exhaustion below. The key here is the Supreme Court has said that that's exactly what Congress did here. It said that courts cannot come up with an excusal mechanism to get you around that requirement. I don't know they come up with it. That they can't find it elsewhere. Rather, the idea is that the, you know, much in the words of Fortin, that Congress meant what it said and said what it meant, that there are three requirements and a district court cannot excuse it. Now, Mr. Habib's... Why don't we have the footnote? So the footnote, it's very important to look at what the footnote actually says, which is it doesn't just say things can be scaled back based on constitutional issues. No, it says we're not reaching it. And if it's as clear as day, the way that you're saying it, why even add the footnote to say that we're not reaching it when it comes to these kinds of questions? Because it wasn't this kind of question. Because the footnote specifically says what kind of question it was. But you just made it sound like there's no daylight, that it covers all scenarios. And if that's the case, then why would the Supreme Court have specifically flagged what it was not covering? Because it wasn't covering an attack on the entire scheme as opposed to an excusal mechanism. The footnote arose from Palomar Santiago's decision in his reply brief to raise an unpreserved issue, which, by the way, Mendoza-Lopez said was specifically carved out and not preserved there either, and so hasn't been discussed as to whether administrative orders can ever serve as an element of a criminal offense. That is, the existence of an administrative order. Because, as Judge Park pointed out, there's separation of power issues. There are different due process issues there. And so that's not before this Court. That wasn't before the Supreme Court. It was saying this is an issue of statutory construction, which is exactly what the Sosa line of cases are. The Ninth Circuit line of cases derives from the exact same reasoning as the Sosa line of cases. They all look at Mendoza-Lopez, and they all say because of Mendoza-Lopez, we believe that in certain situations where a defendant has either been misadvised or there's been an omission of advice regarding removability or relief, under Mendoza-Lopez, we believe that the first two prongs must be excused. Is there a difference between being told the wrong thing by the immigration judge and not knowing, be giving an unknowing, intelligent waiver, or does that all fall under availability in your act? That all falls under availability, and I would note that Mr. Habib was speaking at length and very well about the other issues that he had raised and that Judge Cronin looked to in this, including the speed of what happened, the translations, et cetera. The problem is that Judge Cronin didn't just rely on those. This would be a different case if he said, I have looked at this, and it doesn't matter whether or not the defendant knew that there was a basis to seek administrative relief. I believe that it wasn't available in the first place for X, Y, or Z reasons. What has happened is that the Supreme Court has said that the failure to advise somebody of a basis of relief or a failure to discuss the law properly with regard to the substance of the removal as opposed to with the actual availability of relief doesn't factor into this under those three factors, because that doesn't go toward the availability. The mistake of law and the merits is different from abrogating someone's procedural rights. Precisely. And so that's what happened here. Again, this would be a very different situation if Judge Cronin said, this isn't a question of excusal under SOSA. And let's be clear, SOSA itself referred repeatedly to excusing Sections 1326D1 and 2. In fact, it starts out with statutory exhaustion requirements such as Section 1326D1 are generally not subject to exception. However, here the exhaustion requirement must be excused, and that's at page 136 of SOSA. Judge Cronin refers to excusal at least, I think it's something like ten times in the four pages where he's discussing this. This isn't excusal. That is, he wasn't finding that the remedy wasn't available below. If that's what he found, this would have been a very different situation. The problem is that he was relying on a now abrogated or limited, if there's to be a harmonization, line of cases in this Court that simply are incompatible with Palomar-Santiago's plain statement that there cannot be an excuse of Sections 1326D1 and 2. And, in fact, here the question came down to whether voluntary departure here was available on the basis of an aggravated felony. Again, in Palomar-Santiago, the question was, was the removal of offense an aggravated felony? That is, it's even the same type of fundamental error, a classification or non-classification of a crime as an aggravated felony, where there was a failure to advise the alien, you know something, if I were you, I would think about appealing this. Rather, what Congress has said and what the Supreme Court has verified is what Congress said, is what needs to happen is the opportunity needs to be available. This other question is a very important question as to whether it was fundamentally unfair, but there's a separate prong for fundamental unfairness. And that is a different issue that, as Judge Park pointed out, will probably be decided by another panel. If there are no further questions, we will otherwise rest on our briefs. Thank you, Counsel. Thank you.